Johnnie STOKES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–1009–CR–578.

Court of Appeals of Indiana.

May 9, 2011.

Transfer Denied July 6, 2011.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

*Case Summary and Issues*

Johnnie Stokes was convicted of numerous felonies in 2009. In 2010, pursuant to his appeal, we vacated five of his convictions and remanded to the trial court for resentencing regarding his remaining convictions of robbery, attempted robbery, and unlawful possession of a firearm by a serious violent felon ("UPFSVF"), all Class B felonies, and criminal recklessness as a Class C felony. *Stokes v. State,* 922 N.E.2d 758 (Ind.Ct.App.2010), *trans. denied.* The trial court resentenced him to concurrent terms of twenty years for robbery and ten years for attempted robbery,

to be served consecutive to twenty years for UPFSVF, and consecutive to four years for criminal recklessness, for an aggregate sentence of forty-four years. Stokes now raises a single issue which we expand and restate as two: whether the trial court abused its discretion in sentencing him, and whether his sentence is inappropriate. Concluding that the trial court did not abuse its discretion and his sentence is not inappropriate, we affirm.

*Facts and Procedural History*

In our prior decision we recounted the facts underlying Stokes's convictions:

[O]n the evening of December 18, 2008, several people were present at Big Engine Entertainment ("Big Engine"), a recording studio in Indianapolis owned by Gregory Arnold, Jr. At approximately 7:00 p.m., Shontez Simmons, an employee of Big Engine, went outside the studio building to smoke a cigarette. While outside, she saw Antonio Walker ("Antonio") and Antwane Walker ("Antwane"), two of her cousins, arrive and enter the building. The two men went into the building and spoke briefly to another Big Engine employee, Edriese Phillips. Antonio and Antwane then left the building. Minutes later, Antonio and Antwane returned to the building accompanied by Stokes, Curtis Stokes ("Curtis"), Terry Lynem, and an unidentified man referred to as Marcus. Stokes was carrying a black trash bag that contained an assault rifle.

Once inside the building, Antonio and Antwane entered the recording room where Arnold, Jr. was working. Also present in the room were Andrew Steele, Fred Winfield, and Shantell Williams. Another individual, Earnest Simmons ("Earnest"), was in an adjacent recording booth. Antonio greeted Arnold, Jr. and then asked to speak to Steele in the hallway. Steele walked to the hallway escorted by Antonio and followed by Antwane. Once in the hallway, Antonio pointed a handgun in Steele's face and said, "Get down, you know what this is." Meanwhile, Stokes, who was already in the hallway, pulled the assault rifle out of the trash bag and began firing it, also saying, "Get down, you know what this is." Arnold, Jr. rushed to the door of the recording room and, after a struggle with Antwane, managed to close the door to the room. Arnold, Jr. then retrieved a handgun and, thereafter, slightly opened the door and fired his gun into the hallway at Antonio. Elsewhere in the building, Lynem and Marcus grabbed Phillips. At gunpoint, Lynem and Marcus demanded money from Phillips. Phillips refused, and Lynem struck Phillips with his weapon. Lynem and Marcus took $200 from one of Phillips's pockets.

Stokes, Antwane, Antonio, Lynem, Curtis, and Marcus left the building, with Antwane running backward firing a semi-automatic handgun toward the building as he left. After several people present had called 911, Big Engine employee Collin Moore was found in a hallway suffering from a gunshot wound to his abdomen. Soon thereafter, police officers dispatched to the scene apprehended Antwane, Lynem and Curtis walking together near the studio. Eight days after the incident, Stokes called Arnold, Jr. and offered him $5000 in exchange for Arnold, Jr. agreeing not to "press charges."

The State charged Stokes and each of his four co-defendants with multiple criminal counts. Specifically, the State charged Stokes with one count of class A felony attempted robbery, one count of class B felony robbery, eight counts of class B felony attempted robbery, one count of class B felony unlawful posses-

sion of a firearm by a serious violent felon, and one count of class C felony criminal recklessness. A jury trial was held on March 9 through 13, 2009, for all five defendants. At the close of the State's evidence, the trial court granted Stokes's motion for a directed verdict on three of the class B felony attempted robbery counts. The jury found Stokes guilty on all remaining counts.[1] Following a sentencing hearing, the trial court imposed an aggregate sentence of seventy-four years.

*Id.* at 761–62 (footnote in original, citations omitted).

In our prior decision we reversed five of Stokes's convictions for attempted robbery, affirmed the remainder of his convictions, and remanded to the trial court for resentencing. *Id.* at 766. Following a resentencing hearing, the trial court sentenced him to concurrent terms of twenty years for robbery and ten years for attempted robbery, to be served consecutive to twenty years for UPFSVF, and consecutive to four years for criminal recklessness, for an aggregate sentence of forty-four years. In doing so, the trial court recounted Stokes's extensive criminal record as the sole aggravating circumstance. Stokes now appeals his sentence.

*Discussion and Decision*[2]

I. Abuse of Discretion in Sentencing

■ Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation and citation omitted). A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at 490–91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

Stokes's arguments regarding whether the trial court abused its discretion in sentencing him raise two similar issues. First, he raises the issue of double enhancement in contending that his sentence was improperly enhanced twice for the same prior felony conviction. He asserts his 2001 conviction for dealing in cocaine improperly served as both the basis for his consecutive sentence for his conviction of UPFSVF, and as part of his extensive criminal history that the trial court considered an aggravating circumstance in sentencing him for his other present offenses.

■ Indiana appellate courts have continuously wrestled with the question of multiple enhancement of sentences. *See,*

---

1. Stokes waived a jury trial on the unlawful possession of a firearm by a serious violent felon. Following a bench trial, the court convicted Stokes of that charge as well....

2. Stokes challenges his consecutive sentence for UPFSVF, asserting it is inappropriate and citing Indiana Appellate Rule 7(B) as authori-

ty. However, his legal arguments amount to contentions that the trial court abused its discretion in ordering his consecutive sentence. Accordingly, we address and decide both whether the trial court abused its discretion and whether Stokes's sentence is inappropriate.

e.g., *Sweatt v. State*, 887 N.E.2d 81, 83 (Ind.2008). The general rule is that a trial court cannot impose a "double enhancement[ ] absent explicit legislative direction." *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind.2010) (citations and internal quotations omitted). Accordingly, "the crux of these cases revolves around what, if any, legislative direction we are given." *Id.*

In addressing Stokes's double enhancement challenge, there exists explicit legislative direction permitting the "enhancements" he opposes. The offense of UPFSVF involves possession of a firearm by one who has committed a "serious violent felony," including dealing in cocaine. Ind.Code § 35–47–4–5(b)(23). Indiana law also explicitly authorizes consideration of one's "history of criminal or delinquent behavior" as an aggravating circumstance in imposing a sentence. Ind.Code § 35–38–1–7.1(a)(2). Therefore both "enhancements" are explicitly authorized by the legislature.

Nevertheless, in support of his argument, Stokes refers us to the following portion of *Sweatt:*

> In a case where separate counts are enhanced based on the same prior felony conviction, ordering the sentences to run consecutively has the same effect as if the enhancements both applied to the same count. This result is different only in form from the multiple enhancements the Court of Appeals found improper in *Conrad* [ *v. State*, 747 N.E.2d 575 (Ind. Ct.App.2001), *trans. denied* ]. On the other hand, if the trial court orders the sentences to run concurrently, the enhancements, though duplicative in name, operate just once to increase the defendant's term of imprisonment.

887 N.E.2d at 84 (footnotes omitted).

■ In *Sweatt,* our supreme court stated that a given prior felony cannot be the basis for both a conviction for UPFSVF and for an habitual offender finding. *Id.* Here, however, we are not concerned with an habitual offender finding. Stokes's dealing in cocaine conviction was just one part of his extensive criminal history, of which the general length and severity served as the basis for enhancing his sentences. Although his sentences for UPFSVF, robbery, and criminal recklessness were all enhanced based—technically, in part—on the same prior felony conviction, Stokes's case is substantially different from *Sweatt* because a more appropriate characterization of his enhanced sentences would focus on the general length and severity of his criminal history, not a single conviction among the several. The trial court recounted Stokes's dealing in cocaine conviction while explaining his entire criminal history, and did not rely on it individually. Therefore, we conclude that the trial court did not abuse its discretion in considering Stokes's 2001 dealing in cocaine conviction as both the basis for his present UPFSVF conviction and as part of his extensive criminal record to enhance his sentences for his other present offenses.

■ Next, and similarly, Stokes argues the trial court improperly considered the rifle he held during his raid of the recording studio as: 1) the firearm he unlawfully possessed leading to his conviction for UPFSVF, 2) the firearm that served as the basis for enhancement of his robbery and criminal recklessness convictions to Class B and Class C felonies respectively, *and* 3) in support of his *consecutive* sentence for UPFSVF.

Because this challenge focuses on duplicative consideration of the rifle and not of a prior felony, a double enhancement analysis is inapposite, and this challenge is more appropriately addressed as a possi-

ble violation of the Double Jeopardy clause of the Indiana Constitution. *See* Ind. Const. art. 1, § 14.

Conviction of two or more offenses violates the double jeopardy clause of the Indiana Constitution "if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999) (emphasis in original) (footnote omitted).

The State correctly points out that not one, but three different weapons supported Stokes's conviction for UPFSVF and enhancements for robbery and criminal recklessness. The record indicates his rifle led to his conviction for UPFSVF; the firearms of Lynem and Marcus served as the basis for enhancement of his robbery conviction, and Antwane's firearm and firing towards the building sustained Stokes's conviction for criminal recklessness. As an accomplice, Stokes was properly held responsible for the conduct of other principals. *See Wise v. State,* 719 N.E.2d 1192, 1198 (Ind.1999) ("In Indiana there is no distinction between the responsibility of a principal and an accomplice."). Because the sentences for Stokes's convictions of UPFSVF, robbery, and criminal recklessness were based on different firearms, this case is distinguishable from *Alexander v. State,* 768 N.E.2d 971 (Ind.Ct.App.2002), *aff'd on reh'g,* 772 N.E.2d 476, *trans. denied, Jarrell v. State,* 818 N.E.2d 88 (Ind. Ct.App.2004), *trans. denied,* and *Calvert v. State,* 930 N.E.2d 633 (Ind.Ct.App.2010), in which we concluded that a conviction for UPFSVF and another offense violated the principle of double jeopardy when each case was based on the same firearm. Accordingly, Stokes's sentences do not violate the Double Jeopardy clause of the Indiana Constitution.

For the reasons stated above, we conclude the trial court did not abuse its discretion in ordering that Stokes serve his sentence for UPFSVF consecutive to his other sentences.

### II. Inappropriate Sentence

■ This court has authority to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). In making this determination, we may look to any factors appearing in the record. *Roney v. State,* 872 N.E.2d 192, 206 (Ind.Ct.App.2007), *trans. denied.* Nevertheless, the defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind.2008).

Stokes argues that his consecutive sentence for UPFSVF is inappropriate in light of the nature of the offense and his character. Although Stokes cites Indiana Appellate Rule 7(B) as authority for this challenge, he does not explain why his sentence is inappropriate in light of the nature of his offense or his character. Rather, his argument concerns only those issues we have addressed above upon finding them more appropriately framed as claims that the trial court abused its discretion. Regardless, we evaluate the nature of his offense and his character.

As to the nature of the UPFSVF offense, we conclude that there is nothing remarkably egregious about this instance of his unlawfully possessing a firearm as a serious violent felon. This offense requires the State to prove beyond a reason-

able doubt that Stokes knowingly or intentionally possessed a firearm and that he has previously been convicted of committing or attempting to commit a serious violent felony, as defined by statute. Ind. Code § 35–47–4–5. Viewing this particular offense in isolation, we find nothing remarkable about this instance of unlawfully possessing a firearm as a serious violent felon. *Cf. Mickens v. State,* 742 N.E.2d 927, 931 (Ind.2001) (addressing a double jeopardy challenge to convictions, stating "[c]arrying the gun along the street was one crime and using it was another.").

However, as to Stokes's character, the Pre–Sentence Investigation ("PSI") report reveals his long history of involvement in the criminal justice system. His juvenile record includes true findings for battery, conversion, theft of a vehicle, and theft, two of which would have been Class D felonies if committed as an adult. His juvenile record also reveals his violent nature, especially among groups—he struck someone twice, believing them to have "snitched" on friends who were arrested, PSI at 3; he stuffed various food items in his shirt while friends distracted a cashier; he and his compatriots burglarized a home and were caught speeding away with the stolen items divided among them; and he was arrested following a street fight.

Stokes's adult record began with a relatively minor Class C misdemeanor conviction for operating a vehicle having never received a license. He was next convicted of burglary as a Class B felony and theft as a Class D felony for a home burglary. Following a term in prison, he violated his probation with, among other things, arrests for disorderly conduct, possession of marijuana, operating a vehicle while intoxicated, theft, criminal mischief, carrying a handgun without a license, and three arrests for driving while his license was suspended. He was later convicted of disorderly conduct, operating a vehicle with no

proof of financial responsibility, three more times of driving while suspended, carrying a handgun without a license, and in 2001, dealing in cocaine as a Class B felony. He was also charged with numerous serious violent felonies and misdemeanors that have been dismissed for a variety of reasons, and was disciplined while incarcerated for at least ten violations of prison rules. *See Roney,* 872 N.E.2d at 206 (noting that we may look to any factors that appear in the record). This long list of criminal activity demonstrates his unchanging lack of respect for the rule of law, including repeated and serious driving offenses, and carrying a firearm without proper licensure or legal authorization to do so. Such is the basis of the offense of UPFSVF—possessing a firearm when one has no authority to do so and has previously been recognized as a serious violent felon and one who should not possess a firearm.

This extensive history of criminal activity was the basis for the trial court's imposition of a consecutive sentence for UPFSVF. This lengthy record likewise leads us to the conclusion that a consecutive sentence for UPFSVF is not inappropriate. Stokes has not satisfied his burden to persuade us that his sentence is inappropriate in light of the nature of his offense and his character, and accordingly we must affirm.

### Conclusion

The trial court did not abuse its discretion in sentencing Stokes, and his consecutive sentence for UPFSVF is not inappropriate in light of the nature of his offense and his character. We therefore affirm.

Affirmed.

NAJAM, J., and CRONE, J., concur.