

**FILED**

Nov 17 2016, 8:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gabriel G. Williams,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 17, 2016<br><br>Court of Appeals Case No.<br>71A03-1604-CR-975<br><br>Appeal from the St. Joseph Superior Court.<br>The Honorable Jane Woodward Miller, Judge.<br>Cause No. 71D01-1508-F5-165 |

**Sharpnack, Senior Judge**

## Statement of the Case

[1]     After a bifurcated jury trial, the trial court entered judgment of conviction against Gabriel G. Williams on one count of Level 5 felony criminal

recklessness,[1] and one count of Level 5 felony carrying a handgun without a license.[2] On appeal, Williams challenges the sufficiency of the evidence supporting his conviction for criminal recklessness. We affirm.

## Issue

[2] The sole issue presented in this appeal is whether the evidence is sufficient to support Williams's conviction for Level 5 felony criminal recklessness.[3]

## Facts and Procedural History

[3] On October 9, 2014, at around 3:00 a.m., Williams and a woman, later identified as Judy VanHouten, were sitting in a vehicle parked in the back yard of a residence at 417 North Walnut Street in South Bend. While seated in the vehicle, Williams fired his Smith and Wesson Bodyguard .380 caliber semi-automatic handgun. The bullet went into and through the vinyl siding on the corner of the house, ricocheted after exiting the first house, then lodged in the

---

[1] Ind. Code § 35-42-2-2(b)(2)(A) (2014).

[2] Ind. Code § 35-47-2-1 (2014).

[3] The State argues that this issue is waived because Williams did not make the argument to the trial court. As we consider Williams's claim to be that the evidence is insufficient to support the conviction, we find no waiver, because a claim of insufficiency of the evidence can be made for the first time on appeal. *See e.g.,* Ind. Trial Rule 50(A)(5) (criminal defendant may challenge sufficiency of evidence at trial, in a motion to correct error, or for the first time on appeal); *Dishmon v. State*, 770 N.E.2d 855, 857 (Ind. Ct. App. 2002) (sufficiency of evidence may be raised in a direct criminal appeal even though no objection made to trial court), *trans. denied*; *Harrison v. State*, 469 N.E.2d 22, 24 (Ind. Ct. App. 1984) (criminal defendant may raise sufficiency issue for first time on appeal).

vinyl siding of the second story of another residence across the street, located at 426 North Walnut Street.

[4] The South Bend Police Department uses a system called ShotSpotter. ShotSpotter is an acoustic gunshot detection and location system that uses sensors in a specific geographic area to listen for the sound of gunfire. The system detects and records the sound of gunfire, then calculates and locates the place where the gunfire occurred, and then reports that location to law enforcement. South Bend Police Department officers were dispatched to the area of 417 North Walnut Street as a result of a ShotSpotter alert on October 9, 2014. Officers Jonathon Gray and Andrew Witt responded to the alert, and upon arrival walked to the back of the 417 North Walnut Street residence. There they observed a white Chevrolet Camaro sitting less than ten feet from the back of the residence.

[5] Officer Witt shined his flashlight at the Camaro. Both officers observed two individuals in the Camaro; a male driver, later identified as Williams, and a female passenger, VanHouten. Shortly after Officer Witt shined his flashlight into the car, Williams jumped out of the vehicle and refused to obey commands to stop and show his hands. Instead, Williams started backing toward the rear of the vehicle. Williams was detained for his failure to follow the officers' commands.

[6] After Officer Gray explained to Williams that he and Officer Witt had been dispatched to the scene on a report of shots fired, Williams told the officers that

there was a gun located under the driver's seat of the vehicle. Officer Witt found the gun, the butt of which protruded from under the seat. The gun was loaded with one round in the firing chamber. The gun was secured by the officers. In addition to the gun, marijuana was found in a clear plastic bag in the center console of the car.

[7] After he was advised of his *Miranda* rights, Williams first told officers that he, VanHouten, and a male Williams claimed to know only as "T," had been inside his car, drinking and smoking marijuana. He claimed that they saw a raccoon on a trash can and that "T" used the gun he had in his possession to fire at the raccoon in order to scare it away. According to Williams, "T" left before the officers arrived.

[8] After Officer Gray arrested and interviewed Williams, he followed the trajectory of the bullet. Upon doing so, he discovered the bullet lodged in the siding of the second story of the house located at 426 North Walnut Street. Officer Gray knocked on the door of the house to verify that no one was injured. Beatrice Haynes, who answered the door, said that she and her five children were home that night. The bullet's location was in the siding of the room where Hayne's ten-year-old daughter was sleeping. The officer took photographs and removed the bullet. Officer Witt knocked on the door of the house located at 417 North Walnut Street. He learned that an older adult and children were living there.

[9] Agent Bayne Bennett with the Bureau of Alcohol, Tobacco, Firearms and Explosives Task Force later interviewed Williams at the St. Joseph County Jail. Williams admitted to Agent Bennett that the .380 caliber handgun found in the vehicle belonged to him and that he was the one who shot the gun at a raccoon. During this interview, Williams made no mention of a person named "T." Testing revealed that the .380 caliber handgun found in the Camaro was the gun that fired the bullet recovered from the house located at 426 North Walnut Street.

[10] On August 19, 2015, the State charged Williams with one count of Level 5 felony criminal recklessness, one count of Class A misdemeanor carrying a handgun without a license, one count of Class B misdemeanor possession of marijuana, and one count of Level 5 felony carrying a handgun without a license while having a prior felony conviction within fifteen years. The jury returned guilty verdicts only as to criminal recklessness and carrying a handgun without a license. During the second phase of Williams's trial, the jury returned a guilty verdict for carrying a handgun without a license while having a prior felony conviction within fifteen years. On April 14, 2016, the trial court entered judgment of conviction on one count of Level 5 felony criminal recklessness and one count of Level 5 felony carrying a handgun without a license with a prior conviction. Williams received an aggregate sentence of five years with three years to be served on probation. As a condition of his probation, Williams was required to serve fifteen weekends in the St. Joseph County Jail. Williams now appeals.

## Discussion and Decision

[11] Williams argues that there is insufficient evidence to sustain his conviction of criminal recklessness as a Level 5 felony because there is no evidence that he shot into a dwelling. He argues that his conduct does not fall within the purview of the statute because he did not fire "into" a dwelling, as the bullet lodged in the siding of the second house.

[12] Because we are called upon to interpret the criminal recklessness statute, our standard of review is de novo. *Day v. State*, 57 N.E.3d 809, 811 (Ind. 2016). Our next task is to determine whether sufficient evidence supports the conviction under the statute as interpreted. *Id.* We consider only the probative evidence and reasonable inferences supporting the verdict, without reweighing evidence or reassessing witness credibility. *Id.* We will affirm the jury's verdict unless no reasonable factfinder could conclude the State proved the defendant's guilt beyond a reasonable doubt. *Id.*

[13] The statute defining the offense of criminal recklessness as charged reads as follows:

> (a) A person who recklessly . . . performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness. Except as provided in subsection (b), criminal recklessness is a Class B misdemeanor.
>
> (b) The offense of criminal recklessness as defined in subsection (a) is:
>
> . . . .
>
> (2) a Level 5 felony if:

> (A) it is committed by shooting a firearm into an inhabited dwelling or other building or place where people are likely to gather; . . . .

Ind. Code § 35-42-2-2(b)(2)(A).

[14] In order to prove beyond a reasonable doubt that Williams committed criminal recklessness as a Level 5 felony as charged, the State was required to establish that Williams did recklessly perform an act that created a substantial risk of bodily injury to another person by shooting a firearm into an inhabited dwelling. Ind. Code § 35-42-2-2-(b)(2)(A); Appellant's App. p. 167.

[15] By statute, a person engages in conduct "recklessly" if he or she engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. Ind. Code § 35-41-2-2 (1977). In *Humes v. State*, 426 N.E.2d 379, 383 (Ind. 1981), our Supreme Court held that the legislature "clearly intended the offense of recklessness to be a general intent crime wherein a specific mens rea is not a crucial element." The Court stated the following with respect to reckless homicide:

> But while the intention to do or omit the act resulting in injury to another is a necessary ingredient of reckless homicide, willfulness in the sense of a design, purpose, or intent to inflict an injury is not a necessary element of the offense. In other words, to be guilty of a reckless disregard for the safety of others, it is not necessary that one intend the harm which results from it.

*Id.* (quoting *Beeman v. State*, 232 Ind. 683, 692, 115 N.E.2d 919, 923 (1953)).

[16]     Clearly, firing a pistol at a raccoon, a garbage can, or a house in a residential area is reckless behavior. The challenge here is to determine what constitutes "into" for purposes of the criminal recklessness statute.

[17]     Upon appellate review, the primary purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010). "The statute itself is the best evidence of this intent." *Id.* Courts on review will presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* To that end, we give effect to the plain and ordinary meaning of statutory terms. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). "If a statute is unambiguous, that is susceptible to but one meaning, we must give the statute its clear and plain meaning." *Id.* at 1193-94 (quoting *State v. Evans*, 810 N.E.2d 335, 337 (Ind. 2004)).

[18]     Williams argues that this court should adopt one of the definitions of "into" as expressed by Merriam Webster—"used as a function word to indicate entry, introduction, insertion, superposition, or inclusion"—to find that his conviction should be reversed. *See* http://www.merriam-webster.com/dictionary/into. Utilizing that definition, Williams contends that to be guilty of the offense, the bullet must have entered into the living area of the house, not merely strike the inhabited building. Appellant's Br. p. 10-11. We believe this construction of the statute is too narrow.

[19]   Indiana Code section 35-31.5-2-107 (2012) defines a dwelling as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." In this case, the siding of the house delineates the boundary of the dwelling, building, or enclosed space. An object on the outer side of that boundary is outside the dwelling or building, while an object that is on the inner side of that boundary is "into" the dwelling or building. The extent to which a bullet penetrates the dwelling is a matter of degree, but is "into" the dwelling, nonetheless. This plain reading of the statute supports obvious policy considerations behind the statute—protecting from the risk of injury due to gunfire those who might be present in an inhabited dwelling or other building or place where people are likely to gather.

[20]   Applying that interpretation to the facts of this case, the jury correctly found there was sufficient evidence to support Williams's conviction for criminal recklessness. Here, the bullet entered the siding of one house, passed through the corner exiting that house, ricocheted, and lodged in the siding of the second story of another house, such that it had to be removed from the siding. All of this occurred in the very early hours of the morning in a residential area. To reverse based upon the degree to which the bullet entered the building would be to reweigh the evidence, a task that is inappropriate upon appellate review.

## Conclusion

[21]   In light of the foregoing, we affirm Williams's conviction of criminal recklessness as a Level 5 felony.

[22] Affirmed.

May, J., and Brown, J., concur.