FILED

Sep 25 2017, 10:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

John H. Halstead
Ryan D. O'Day
Kightlinger & Gray, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Douglas E. Sakaguchi
James P. Barth
Pfeifer, Morgan & Stesiak
South Bend, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS
ASSOCIATION

William E. Winingham
Jonathon B. Noyes
Wilson Kehoe Winingham LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana Insurance Guaranty Association, | September 25, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 71A03-1703-CT-610 |
| v. | Interlocutory Appeal from the St. Joseph Superior Court |
| Carlos A. Smith, | The Honorable Jenny Pitts Manier, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 71D05-1603-CT-170 |

**Baker, Judge.**

[1] Two motorists were involved in a car accident. During the subsequent legal proceedings, the Indiana Insurance Guaranty Association (IIGA) intervened as the real party in interest, and the trial court substituted the IIGA for the original insurance company defendant. The IIGA filed a motion to dismiss, arguing that the tortfeasor's insurance company's denial of coverage did not render him uninsured such that the other motorist seeking damages could not recover under his own insurance policy's provision on uninsured automobiles. The IIGA brings this interlocutory appeal following the trial court's denial of its motion. Finding no error with the trial court's denial of the motion to dismiss, we affirm.

## Facts

[2] On August 18, 2015, Carlos Smith and Martin Torres were involved in a car accident in South Bend. At the time of the accident, Smith was insured by Affirmative Casualty Insurance Company (Affirmative) and Torres was insured by ACCC Insurance Company (ACCC). On November 10, 2015, ACCC denied coverage to Torres based on his lack of cooperation with the accident investigation.

[3] On March 29, 2016, Smith filed a complaint against Torres and Affirmative, alleging that Torres negligently caused Smith's injuries and that Torres was uninsured at the time of the accident based on ACCC's denial of coverage. He also alleged that, under the uninsured motorist provision of his own insurance policy, Affirmative was liable for the damages he suffered as a result of an

accident with an uninsured driver. The Affirmative policy defines an
"uninsured automobile" as:

> 1. an automobile or trailer with respect to the ownership,
> maintenance or use of which there is, in at least the amount
> specified by the financial responsibility law of the state in which
> the insured automobile is principally garaged, no bodily injury
> liability bond or insurance policy applicable at the time of the
> accident with respect to any person or organization legally
> responsible for the use of such automobile . . . .
>
> ***
>
> 3. an automobile with respect to which there is a bodily injury
> liability insurance policy applicable at the time of the accident
> but the Company writing the same is or becomes insolvent
> subsequent to the date of an accident.

Appellant's App. Vol. II p. 44.

[4]     Five days before Smith filed his complaint, an order of liquidation was entered
against Affirmative. The IIGA was subsequently deemed the insolvent insurer
under Indiana Code section 27-6-8-7(a)(2).[1] The IIGA intervened in the case as
the real party in interest, and the trial court substituted the IIGA for Affirmative
as the defendant.

---

[1] This statute provides that the IIGA shall "[b]e deemed the insurer to the extent of its obligation on the
covered claims as limited by this chapter and to this extent shall have all rights, duties, and obligations of the
insolvent insurer as if the insurer had not become insolvent . . . ." I.C. § 27-6-8-7(a)(2).

On December 7, 2016, the IIGA filed a motion to dismiss, arguing that ACCC's denial of coverage did not render Torres uninsured under Indiana law or the Affirmative policy. A hearing took place on January 11, 2017, and that same day, the trial court denied the IIGA's motion. The IIGA now appeals.

## Discussion and Decision

The IIGA argues that the trial court erred in denying its motion to dismiss. Specifically, it argues that Torres was not uninsured, and that as a result, Smith did not have an actionable claim against Affirmative from which he could recover damages.

A motion to dismiss under Trial Rule 12(B)(6) "tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Lockhart v. State*, 38 N.E.3d 215, 217 (Ind. Ct. App. 2015) (internal quotations omitted). We apply a de novo standard of review to a trial court's ruling on a Trial Rule 12(B)(6) motion to dismiss. *Id.*

Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes. *Clark Cnty. Drainage Bd. v. Isgrigg*, 966 N.E.2d 678, 680 (Ind. Ct. App. 2012). "The Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Nicoson v.*

*State*, 938 N.E.2d 660, 663 (Ind. 2010). We review matters of statutory interpretation de novo because they present pure questions of law. *Id.*

[9] When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011). We must determine whether the language of the contract is ambiguous. *Id.* The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. *Id.* We must accept an interpretation of the contract that harmonizes its provisions. *Id.*

[10] Indiana Code section 27-7-5-4(a) defines "uninsured motorist vehicle" as follows:

> For the purpose of this chapter, the term uninsured motor vehicle, subject to the terms and conditions of such coverage, means a motor vehicle without liability insurance or a motor vehicle not otherwise in compliance with the financial responsibility requirements of IC 9-25 [governing minimum amounts of financial responsibility] or any similar requirements applicable under the law of another state . . . .

[11] The Affirmative policy defined an "uninsured automobile" as

> 1. an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amount specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy *applicable at the time of the accident* with respect to any person or organization legally responsible for the use of such automobile[.]

***

     3.  an automobile with respect to which there is a bodily injury liability insurance policy *applicable at the time of the accident* but the Company writing the same is or becomes insolvent subsequent to the date of an accident.

Appellant's App. Vol. II p. 44 (emphasis added). The Affirmative policy lists five exclusions to the definition of uninsured automobile, none of which involve a vehicle that was denied coverage.

[12]    Whether Torres's vehicle is considered an uninsured motor vehicle under the law is a matter of first impression. Our General Assembly enacted a statute governing uninsured motorist vehicle coverage[2] because it wanted to ensure that motorists have insurance coverage in case of accidents and collisions. Indeed, our General Assembly considers uninsured motorist coverage so important that it requires all insurance companies selling insurance in our state to provide it to every motorist who purchases a motor vehicle insurance liability policy. I.C. § 27-7-5-2(a). The statute governing uninsured motorist vehicle coverage "provides broad protection to insureds injured in accidents with financially irresponsible motorists." *United Nat'l. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 464 (Ind. 1999). "Because the statute is remedial, it is to be liberally construed." *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 540 (Ind. 2002).

---

[2] Ind. Code ch. 27-7-5 *et. seq.*

[13] A tortfeasor vehicle that had its coverage denied falls within the category of "motor vehicle[s] not otherwise in compliance with the financial responsibility requirements," I.C. § 27-7-5-4(a), because a denial of coverage necessarily means that, although the tortfeasor vehicle technically has insurance, the tortfeasor is without insurance that can actually cover the damages. In other words, following a denial of coverage, a tortfeasor vehicle cannot be in compliance with our statutory financial responsibility requirements. We therefore interpret the statute's definition of "uninsured motor vehicle" to include motor vehicles that had liability insurance at the time of an accident but that were later denied coverage.

[14] To interpret the statute otherwise would be contrary to public policy. First, motorists buy insurance and pay insurance premiums precisely to have coverage when they need it, including when they are involved in accidents with tortfeasors who do not have vehicle insurance. To deny motorists uninsured motorist coverage would allow insurance companies to play a game of "gotcha" with policy owners that would defeat the purpose of buying insurance in the first place—insurance companies would reap the benefit of motorists buying their policies while motorists would reap none.

[15] Second, if a tortfeasor does not have vehicle insurance, then a motorist with insurance should be able to recover damages under his own insurance policy's provision on uninsured motorists. But under the circumstances with which we are presented here, denying coverage to a motorist under his own insurance policy because a tortfeasor's insurance company denied coverage to the

tortfeasor would preclude the motorist from recovering any damages at all from the accident. In short, denying a motorist coverage under his own policy's provision on uninsured motorists puts him in a worse position than he would be in if the tortfeasor had no vehicle insurance. This result would defeat our General Assembly's goal of ensuring coverage for motorists.

[16] In addition to finding that Torres's vehicle is an uninsured motor vehicle under the law, we find that it falls within Affirmative's definition of uninsured automobile. Although Torres technically had vehicle insurance at the time of the August 18, 2015, accident, ACCC denied him coverage for that accident. As a result, Torres did not have vehicle insurance from which Smith could benefit. Therefore, Torres's vehicle fits squarely into Affirmative's definition of an uninsured automobile as an automobile for which there is "no bodily injury liability bond or insurance policy *applicable at the time of the accident* with respect to any person or organization legally responsible for the use of such automobile[.]" Appellant's App. Vol. II p. 44 (emphasis added). Torres did not have insurance that could be applied to the damages from the accident; his vehicle was, therefore, an uninsured automobile.

[17] We conclude that, as a matter of law and public policy, a vehicle that has liability insurance but was denied coverage meets the statutory definition of uninsured motor vehicle. We also conclude that Torres's vehicle meets Affirmative's definition of uninsured automobile. Accordingly, Smith alleged in his complaint a set of circumstances under which he would be entitled to relief. The trial court did not err in denying the IIGA's motion to dismiss.

The judgment of the trial court is affirmed.

Mathias, J., concurs.
Altice, J., concurs in result with a separate opinion.

| | |
|---|---|
| Indiana Insurance Guaranty Association, | Court of Appeals Case No. 71A03-1703-CT-610 |
| *Appellant-Defendant,* | |
| v. | |
| Carlos A. Smith, | |
| *Appellee-Plaintiff* | |

**Altice, Judge, concurring in result.**

[19] I concur with the decision to affirm the trial court's judgment denying IIGA's motion to dismiss, but I write separately because my reasoning differs somewhat from that of the majority.

[20] "It is well settled that where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012) (quoting *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1056 (Ind. 2001)). I would find the language of the Affirmative policy's definition of "uninsured automobile" to be ambiguous with respect to whether

it includes an automobile that was insured at the time of the accident, but coverage was subsequently disclaimed due to the tortfeasor's breach of his or her insurance contract.

[21] Although the Indiana appellate courts have not addressed this question before, in *Vanguard Ins. Co. v. Polchlopek*, 222 N.E.2d 383, 384-386 (N.Y. 1966), the New York Court of Appeals found materially identical policy language to be ambiguous under the same circumstances presented here. Specifically, the court found that the phrase "applicable at the time of the accident" required construction when an insurance company had disclaimed liability subsequent to the accident. *Id.* at 386. The court reasoned that the phrase should be construed in light of the purpose of the clause in which it was found, which was undoubtedly to protect motorists against damages inflicted by a financially irresponsible party. The court held that, "[b]earing that purpose in mind, it does not seem unreasonable to hold that an insurance policy which is disclaimed subsequent to an accident is not a policy applicable at the time of the accident." *Id.* After all, the court reasoned, the tortfeasor was just as financially irresponsible as a result of his insurer's disclaimer of coverage as he would have been if he had never obtained coverage in the first place. The court noted further that the policy did not contain an exclusion for vehicles upon which there had been a disclaimer of coverage, and "[i]f it was the insurer's intent to exclude from the definition of an uninsured auto those autos upon which a disclaimer of coverage is made subsequent to an accident, this intent

should have been explicitly written into the exclusionary clause of the policy which negatively defined an uninsured auto[.]" *Id.*

[22] Although it is true that not every court considering the issue before us has reached the same result, *see, e.g., Dreher v. Aetna Cas. & Sur. Co.*, 226 N.E.2d 287, 288-89 (Ill. App. Ct. 1967) (finding a materially identical definition of "uninsured automobile" to unambiguously exclude automobiles for which coverage is subsequently denied due to the insured's refusal to cooperate or the insurer's insolvency), I find the reasoning of *Vanguard* persuasive and fully applicable to the case before us. I would find the Affirmative policy's definition of "uninsured automobile" to be ambiguous, and consequently construe it in Smith's favor. Because I believe the policy provides coverage in this situation, I find it unnecessary to consider whether such coverage is mandated by statute.