

IN THE

# Court of Appeals of Indiana



FILED

Dec 12 2025, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Nathan Maxwell,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

December 12, 2025

Court of Appeals Case No.
25A-CR-1031

Appeal from the Marion Superior Court

The Honorable James B. Osborn, Judge

Trial Court Cause No.
49D21-2405-F5-15063

---

**Opinion by Judge Foley**
Judges May and Felix concur.

**Foley, Judge.**

[1] Nathan Maxwell ("Maxwell") was convicted after a jury trial of Count I: intimidation[1] as a Level 5 felony and Count II: pointing a firearm at another person as a Level 6 felony.[2] Maxwell raises two restated issues for our review:

I. Whether the State presented sufficient evidence to support his conviction for intimidation; and

II. Whether Maxwell's convictions for Level 5 felony intimidation and Level 6 felony pointing a firearm at another person violate the protections against double jeopardy.

[2] We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History[3]

[3] In 2024, Terry Trent ("Trent") spent his time working two different jobs, one as a part-time Deputy Constable for the Center Township Constable Office and the other as a part-time traffic director. One day, while working as a part-time traffic director, Trent noticed a campground near the area where he was

---

[1] Ind. Code § 35-45-2-1(b)(2)(A).

[2] I.C. § 35-47-4-3(b).

[3] We held oral argument on November 18, 2025, at New Albany-Floyd County Consolidated School Corporation. We thank counsel for their skilled presentations and extend gratitude to Senior Judge Vicki Carmichael, Leadership Southern Indiana, and the students of their Nexgen program for their hospitality. Nexgen is a youth leadership program consisting of high school juniors from Clark, Floyd, and Scott counties.

directing traffic. Trent had been looking for campground space to rent for the summer to spend time with his grandchildren and, therefore, decided to return to the campground sometime.

[4] During the daylight hours of May 23, 2024, Trent returned to the campground, which was located on West Southport Road, near the White River. Trent was accompanied by his girlfriend, Misty Roberts ("Roberts"). When Trent and Roberts arrived, the gate to the campground gate was locked. Trent backed his black SUV into the campground driveway, to wait and see if they "could meet with somebody that may go into the property there just to get some more information[.]" Tr. Vol. 2 p. 97. While waiting in the campground driveway, Roberts exited the passenger side of the SUV with her four-pound dog. Maxwell's real property and residence abutted the campground property. Roberts walked her dog on Maxwell's property and driveway. *See* State's Ex. 8, Video 1 at 00:00–01:08; *see also* State's Ex. 8, Video 2 at 00:00–00:40. Roberts mistakenly believed that Maxwell's driveway was the parking lot for the campground.

[5] Maxwell was inside his home with his father, fiancée, and two children. Maxwell's fiancée notified him of an alert on their security system that someone, which turned out to be Roberts, was on their property. Maxwell then retrieved a handgun from his bedside table gun safe because they "weren't expecting anybody, and there was not . . . [a] package or anything like that [they] expected to be delivered." Tr. Vol. 2 p. 194. Maxwell went outside with

his handgun in hand to confront Roberts. *See* State's Ex. 8, Video 1 at 01:09–01:22; *see also* State's Ex. 8, Video 3 at 00:00–00:27.

[6] Maxwell confronted Roberts, yelled at her, and "was pretty pissed." Tr. Vol. 2 p. 134. Roberts apologized and said she "didn't know that [she] wasn't supposed to be there" and that she thought the home was the campground office. *Id*. at 137. Trent, who was seated in the SUV, asked if "there was a problem." *Id*. at 103; State's Ex. 1 at 01:48–02:00. Maxwell responded affirmatively, and Trent exited the vehicle. As Trent was exiting the driver's seat of the SUV, Maxwell "racked a round into his firearms [sic] that he was carrying." Tr. Vol. 2 p. 103; *see also* State's Ex. 8, Video 3 at 00:18–00:32. Trent walked around the rear of the SUV, and Roberts told Trent that she observed Maxwell rack his firearm. Maxwell later stated that he "cocked back [his] gun[]" because he saw that Trent had a weapon on his person, noticing "the imprint of the weapon because [Trent] was wearing tight clothing[.]" Tr. Vol. 2 p. 202. Once Trent walked around the rear of the vehicle, Maxwell was mad, cussing, and said "you guys need to get off the property[.]" *Id*. at 104.

[7] Trent believed that he was on the campground's property, not on Maxwell's property. After a brief discussion with Trent, Maxwell turned his back to Trent and began walking back towards his home. *See* State's Ex. 8, Video 3 at 01:03–01:08. At that point, Trent said to Maxwell "you don't have to be a dick about it." *Id*. at 205. Maxwell then quickly turned around, began to argue with Trent, and "close[d] the gap" between them. Tr. Vol. 2 p. 214; *see* State's Ex. 5, Video 4 at 00:00–00:30. Maxwell's father, who had also come outside,

attempted to intervene, placing himself between Maxwell and Trent. He encouraged Maxwell to "go on" and tried to walk him back to the home. State's Ex. 5, Video 4 at 00:20–01:15.

[8] As Maxwell's father attempted to walk Maxwell back towards the home, Trent began to reach into his left lower cargo shorts pocket to retrieve his wallet and ID to show Maxwell he was a law enforcement officer. At that point, Maxwell raised his handgun in the direction of Trent and told him to "get your hands out of your pockets, dude, get your hands out of your pocket." State's Ex. 5, Video 4 at 00:30–00:38. Trent "proceeded to pull out [his] police ID." Tr. Vol. 2 p. 105. Trent showed Maxwell his "police ID and [Maxwell] said he didn't give a – that [Trent] was a cop." *Id.* Maxwell eventually lowered the handgun and began to walk backwards toward the home. Maxwell's father again attempted to get Maxwell inside the home. Meanwhile, Trent returned to his SUV to retrieve his cell phone to call 911. As Trent reached into the front passenger seat of the vehicle, Maxwell again raised the handgun and aimed it at Trent. *See* State's Ex. 5, Video 4 at 00:55–01:10.

[9] After pushing his son towards the home, Maxwell's father returned to speak with Trent and Roberts to "figure out what was going on[.]" Tr. Vol. 2 p. 108. Maxwell's father was very apologetic while conversing with Trent and Roberts. However, while Maxwell's father was speaking with them, Trent observed Maxwell again pointing his firearm in their general direction. Trent was able to call the police and waited for their arrival.

[10] When officers arrived, Maxwell was sitting on the porch with his fiancée. Maxwell's handgun was sitting on an outdoor coffee table, "cleared[,]" with the slide of the handgun "locked to the rear." *Id*. at 168; *see also* Ex. Vol. I p. 40. While on scene, the responding officers noted that Maxwell was "kind of aggressive — passive aggressive." Tr. Vol. 2 p. 167.

[11] On May 28, 2024, the State charged Maxwell with Count I: Level 5 felony intimidation and Count II: Level 6 felony pointing a firearm at another person. The charging information stated:

> Count I
>
> On or about May 23, 2024, [Maxwell] did communicate a threat to commit a forcible felony, that is: Battery by Mean[s] of a Deadly Weapon, to [Trent], another person, by drawing or using a deadly weapon, that is: a handgun, with the intent that [Trent] be placed in fear that the threat will be carried out[.]
>
> Count II
>
> On or about May 23, 2024, [Maxwell] did knowingly point a firearm, to-wit: a handgun, at [Trent.]

Appellant's App. Vol. II p. 15. A jury trial was held on March 6, 2025, and the jury found Maxwell guilty of both counts. The trial court entered judgment of conviction on both counts and scheduled a sentencing hearing for April 4, 2025. At the sentencing hearing, Maxwell requested that the trial court vacate Count I because it was unsupported by testimony at trial. The trial court disagreed,

reasoning that "there was sufficient information in the trial for the jury to come to the conclusion they did[.]" Tr. Vol. 3 p. 15. The trial court sentenced Maxwell to 1,095 days on his intimidation conviction with 365 days served on Marion County Community Corrections ("MCCC") and the rest suspended to probation with a concurrent term of 365 days on MCCC for his pointing a firearm at another person conviction. Maxwell now appeals.

## Discussion and Decision

### I.   Sufficiency Evidence

Maxwell challenges the sufficiency of the evidence supporting his conviction for intimidation. He argues that, to obtain a Level 5 felony conviction, the State was obligated to prove he engaged in an act of intimidation where that act of intimidation was independent of his use of a firearm. "Sufficiency-of-the-evidence claims trigger a deferential standard of review in which we 'neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the jury.'" *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024) (quoting *Brantley v. State*, 91 N.E.3d 566, 570 (Ind. 2018)). "A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015).

This case presents a question of statutory interpretation and "[w]e review matters of statutory interpretation *de novo* because they present pure questions of

law." *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010) (citing *Gardiner v. State,* 928 N.E.2d 194, 196 (Ind. 2010)). "Our primary goal in interpreting statutes is to determine and give effect to the Legislature's intent." *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012) (citing *State v. Oddi–Smith,* 878 N.E.2d 1245, 1248 (Ind. 2008)). "The best evidence of that intent is the language of the statute itself, and we strive to give the words in a statute their plain and ordinary meaning." *Oddi-Smith*, 878 N.E.2d at 1248 (citing *Hendrix v. State,* 759 N.E.2d 1045, 1047 (Ind. 2001)). However, "a statute is ambiguous when it allows more than one reasonable interpretation." *Mi.D. v. State*, 57 N.E.3d 809, 813 (Ind. 2016) (citing *Adams*, 960 N.E.2d at 798). "And if we conclude a statute is ambiguous, then we resort to the rules of statutory interpretation to fulfill the legislature's intent." *Id*. (citing *Suggs v. State,* 51 N.E.3d 1190, 1194 (Ind. 2016)). "The rule of lenity requires that penal statutes be construed strictly against the State and any ambiguities resolved in favor of the accused[.]" *Meredith v. State*, 906 N.E.2d 867, 872 (Ind. 2009) (citing *State v. Turner,* 567 N.E.2d 783, 783–84 (Ind.1991)).

[14] Pursuant to Indiana Code section 35-45-2-1(a)(4), "[a] person who communicates a threat with the intent: . . . that another person be placed in fear that the threat will be carried out . . ." commits intimidation as a Class A misdemeanor. However, the offense is elevated to a Level 5 felony if "*while committing it, the person draws or uses a deadly weapon*[.]" Indiana Code section 35-45-2-1(b)(2)(A) (emphasis added). Indiana Code section 35-45-2-1(c) defines "[t]hreat" to mean "an expression, by words or action[.]"

[15]     Here, Maxwell reads the Level 5 felony intimidation statute to require proof of two separate and distinct acts: (1) communicating a threat and (2) drawing or using a deadly weapon "while" communicating the threat.[4] Appellant's Br. p. 8. In essence, Maxwell's argument rests on his interpretation of the meaning of "while" in relation to "while committing it, the person draws or uses a deadly weapon[.]" I.C. § 35-45-2-1(b)(2)(A).

[16]     Maxwell contends that the term "while" in Indiana Code section 35-45-2-1(b)(2)(A) denotes a temporal relationship requiring the State to prove that two distinct and separate acts occurred at the same time. Maxwell argues that the plain language of the statute and the structure of the Criminal Code support this theory. However, we disagree with Maxwell's interpretation of the statute and conclude that the statute instead clearly and unambiguously allows for a conviction under the circumstances at hand.

[17]     When reviewing the statutory language as a whole, we note that to obtain a conviction for the elevated Level 5 felony, the State was required to prove that Maxwell, "*while committing*" the base offense of intimidation, drew or used a deadly weapon. I.C. § 35-45-2-1(b)(2)(A) (emphasis added). "When we interpret statutes, we give the words their plain meaning, considering the statutory structure as a whole and avoiding interpretations that render any part of the statute meaningless or superfluous." *Turner v. State*, 253 N.E.3d 526,

---

[4] We note that Maxwell does not argue that there was insufficient evidence to prove any of the remaining elements of intimidation. *See* I.C. § 35-45-2-1(b)(2)(A).

536–37 (Ind. 2025) (citing *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016)). Our Supreme Court in *Turner* declined to consult a dictionary for its interpretation of a portion of the self-defense statue set forth in Indiana Code Section 35-41-3-2(c) because its "meaning is so plain that there is no need to walk through the[] dictionary definition[]." *Turner*, 253 N.E.3d at 537. Here too, we decline to consult a dictionary for our interpretation of "while committing it" in Indiana Code section 35-45-2-1(b)(2)(A) because its meaning is so plain there is no need to consult the dictionary definition. Read in its entirety, "while committing it" denotes an act contemporaneous in time with the underlying felony. I.C. § 35-45-2-1(b)(2)(A).

[18]     The facts adduced at trial reflect that on at least two occasions during the episode of criminal conduct, Maxwell drew and pointed a firearm in the direction of Trent. Maxwell first pointed a firearm at Trent while Trent was reaching into his lower left cargo shorts pocket and Maxwell also pointed his firearm at Trent while Trent attempted to retrieve his cell phone from his vehicle. *See* State's Ex. 5, Video 4. Maxwell's action of pointing a firearm at Trent communicated a threat of harm and the use of the weapon was *contemporaneous* in time with his threat, therefore, we conclude that the State provided sufficient evidence to convict Maxwell of intimidation as a Level 5 felony.

## II.    Substantive Double Jeopardy

[19]    Maxwell argues that his convictions for both Level 5 felony intimidation and Level 6 felony pointing a firearm at another person violate principles of substantive double jeopardy.  We review double jeopardy claims de novo.  *See Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020); *see also Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020).  Our Supreme Court in *Wadle* developed a three-step approach to analyze substantive double jeopardy claims.  *See generally Wadle*, 151 N.E.3d 227.  Under Step 1, courts are tasked with examining the statutory language of the offenses "[w]hen multiple convictions for a single act or transaction implicate two or more statutes[.]"  *Wadle*, 151 N.E.3d at 248.  "If the language of either statute clearly permits multiple punishment[s], either expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy."  *Id.* (footnote omitted).

[20]    As to Step 1, Maxwell argues that neither pointing a firearm at another person nor intimidation clearly permits multiple punishments.  The State agrees with Maxwell, conceding that "the statutes for intimidation and pointing a firearm [at another person] do not expressly allow for multiple punishments."  Appellee's Br. p. 17.  Upon review of the statutes at issue, we agree with the parties.  *See* I.C. § 35-45-2-1(b)(2)(A) (intimidation); I.C. § 35-47-4-3(b) (pointing a firearm at another person).  We therefore proceed to Step 2 under *Wadle*.

[21] Under Step 2, we are tasked with determining whether the offenses, either factually or inherently, are included in each other. *Wadle*, 151 N.E.3d at 248. Maxwell does not argue, and the State concedes, that the Level 5 felony intimidation charges are not inherently included in the Level 6 felony pointing a firearm at another charge. Therefore, we assume for purpose of this appeal that the intimidation charge is not inherently included in the felony pointing a firearm at another charge and proceed to determine if they are factually included in each other. *See A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024). Here, we begin by analyzing whether the offenses are factually included.

[22] "An offense is factually included when the charging information alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Fisher v. State*, 264 N.E.3d 696, 703 (Ind. Ct. App. 2025) (internal quotation marks omitted) (quoting *Woodcock v. State*, 163 N.E.3d 863, 874 (Ind. Ct. App. 2021), *trans. denied*.). "The Indiana Supreme Court has recently clarified that 'when assessing whether an offense is factually included, a court may examine only the *facts as presented on the face of the charging instrument*.'" *Robinson v. State*, 251 N.E.3d 1124, 1132 (Ind. Ct. App. 2025) (quoting *A.W.*, 229 N.E.3d at 1067). However, "where ambiguities exist in a charging instrument about whether one offense is factually included in another . . . courts must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation at Step 2." *A.W.*, 229 N.E.3d at 1069 (internal citation omitted).

[23]   Maxwell contends that "the facts as alleged in the charging information create the presumption of a double jeopardy violation." Appellant's Br. p. 18. The State charged Maxwell with Level 5 felony intimidation and Level 6 felony pointing a firearm at another person as follows:

> Count I
>
> On or about May 23, 2024, [Maxwell] did communicate a threat to commit a forcible felony, that is: Battery by Mean[s] of a Deadly Weapon, to [Trent], another person, by drawing or using a deadly weapon, that is: a handgun, with the intent that [Trent] be placed in fear that the threat will be carried out[.]
>
> Count II
>
> On or about May 23, 2024, [Maxwell] did knowingly point a firearm, to-wit: a handgun, at [Trent.]

Appellant's App. Vol. II p. 15. Specifically, Maxwell contends that both counts include the same date and victim, and he argues that the term "drawing or using a . . . handgun" can have more than one plausible interpretation. Appellant's Br. p. 18. Maxwell also asserts that the pointing of the handgun described in Count II can also refer to the drawing or use of a handgun in Count I, therefore, resulting in ambiguity. Here, the State concedes that, as charged, it is ambiguous whether pointing the firearm was a lesser-included charge of Level 5 felony intimidation. We agree and therefore construe the ambiguity in favor of Maxwell, identify a presumptive double jeopardy violation, and proceed to Step 3. *See A.W.*, 229 N.E.3d at 1069.

[24] Under Step 3, if "a court has found that one offense is included in the other—either inherently or as charged—the court must then (and only then) 'examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial.'" *Id.* at 1071 (emphasis removed) (quoting *Wadle*, 151 N.E.3d at 249). During this final step, the court's inquiry focuses on the defendant's actions and whether they were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 249 (quoting *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010)).

[25] The facts adduced at trial reflect that Maxwell exited his home carrying a firearm in hand. After a brief conversation with Roberts, Trent exited his vehicle to discuss Maxwell's grievances. However, at one point during the conversation, Trent attempted to reach into his lower left cargo shorts pocket to retrieve his ID, and Maxwell raised and pointed his firearm in the direction of Trent. After Maxwell's father convinced him to return to the home, Maxwell briefly lowered the firearm. Trent then turned his back to Maxwell and went to his vehicle to retrieve his cell phone. Maxwell again raised his firearm and pointed it in the direction of Trent. At that point, Maxwell's father had to push his son towards the home. The entire interaction lasted approximately 90 seconds.

[26] The State argues that the encounter between Maxwell and Trent involved more than one transaction, claiming that because Maxwell pointed the firearm at Trent twice and "intervening events" occurred between the first and second

instance, each time Maxwell raised the firearm constituted a separate offense. Appellee's Br. p. 18. We disagree. While it is true that Maxwell pointed the firearm at Trent at least two times, the entire confrontation lasted only approximately 90 seconds. During those 90 seconds, Maxwell never stopped arguing and conversing with Trent and remained only feet from Trent each time he pointed the firearm at Trent. In addition, during final argument, the State identified the same instances of Maxwell pointing the firearm at Trent in support of both charges. As to Count I, the State argued "[o]kay. So we know he made a threat by pointing the firearm twice." Tr. Vol. 2 p. 233. With respect to Count II, the State argued "[a]nd of course, we have proven this. You heard testimony that he pointed the firearm three times, we saw him do it twice on video, and we know that is not reasonable, right?" *Id*. at 236. Based upon the short duration of the confrontation, the singleness of its purpose, and the quick succession of the two instances of Maxwell pointing his firearm, we fail to discern any "intervening events" that would allow us to conclude that Counts I and II constituted separate transactions. Appellee's Br. p. 18.

[27] Therefore, we conclude that Maxwell's multiple punishments for pointing a firearm at another person and for drawing a firearm violate the prohibition against substantive double jeopardy. Since Maxwell was convicted of two felonies, intimidation as a Level 5 felony and pointing a firearm at another as a Level 6 felony, we reverse "the conviction with the lesser penalty," which is Maxwell's conviction for Level 6 felony pointing a firearm at another. *Eversole v. State*, 251 N.E.3d 604, 609 (Ind. Ct. App. 2025) (citing *Wadle*, 151 N.E.3d at

256), *trans. denied*. Therefore, we reverse Maxwell's conviction for pointing a firearm at another person as a Level 6 felony and remand with instructions to vacate that conviction.

## Conclusion

[28] Although we conclude that sufficient evidence was presented to support Maxwell's conviction for intimidation as a Level 5 felony, we conclude that his convictions for intimidation and pointing a firearm at another person violate principles of substantive double jeopardy. We therefore affirm the conviction for Level 5 felony intimidation while reversing and remanding with instructions to vacate Maxwell's conviction for pointing a firearm at another person.

[29] Affirmed in part, reversed in part, and remanded.

May, J. and Felix, J., concur.

ATTORNEYS FOR APPELLANT

Talisha R. Griffin
Carter R. Gallagher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Daniel H. Frohman
Deputy Attorney General
Indianapolis, Indiana