

**FILED**

Jul 15 2019, 5:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darnell Cleveland,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

July 15, 2019

Court of Appeals Case No.
18A-CR-2298

Appeal from the Marion Superior
Court

The Honorable Clayton A.
Graham, Judge

Trial Court Cause No.
49G07-1711-CM-45511

**Baker, Judge.**

[1] Darnell Cleveland appeals his convictions for Class A Misdemeanor Carrying a Handgun Without a License[1] and Class A Misdemeanor Possession of Marijuana,[2] arguing that (1) the trial court should have excluded all evidence obtained from his search and arrest because they were both unlawful; (2) the trial court erred when it ordered the destruction of his handgun post-conviction; and (3) the trial court erred when it ordered him to pay a public defender fee without first conducting an indigency hearing. Finding that the search was lawful and that there was no error regarding the public defender fee, but that there was error regarding the trial court's order to destroy, we affirm in part and reverse and remand in part with instructions.

# Facts[3]

[2] On November 24, 2017, Indianapolis Metropolitan Police Department (IMPD) Officer Eric Parrish was patrolling 38th Street in Indianapolis when his radar detected a Ford Explorer driving by at sixty miles per hour in a thirty-five-mile-per-hour zone. Officer Parrish started following the vehicle. He also ran a search of the vehicle's license plate number and found that the license plate was registered to a Chevrolet. With this information, Officer Parrish initiated a

---

[1] Ind. Code § 35-47-2-1.

[2] Ind. Code § 35-48-4-11.

[3] We held oral argument in this case at Ivy Tech Community College in Muncie on May 1, 2019. We thank both parties for their stimulating discussion, and we thank Ivy Tech, its faculty, and its students for their warm and generous hospitality.

traffic stop in a nearby Walgreens parking lot. Officer Nickolas Smith assisted Officer Parrish with the stop.

[3]     As the officers approached both sides of the stopped vehicle, they smelled the strong odor of raw marijuana emanating from the vehicle. Officer Parrish asked all the occupants—the driver, the passenger, and Cleveland, who was sitting in the backseat on the passenger's side—for identification. Officer Parrish then discovered that there was an outstanding warrant for the driver's arrest. Officer Parrish asked the driver to exit the vehicle. The driver complied.

[4]     Officer Parrish conducted a pat-down search of the driver to check for weapons. The driver started to resist, so Officer Smith went around to the driver's side to help Officer Parrish detain, handcuff, and arrest the driver. After returning to the passenger's side, Officer Smith saw Cleveland, who had exited the vehicle at some point, walking northbound through the Walgreens parking lot with a gold bag. Officer Smith ordered Cleveland to stop and to put the bag down, which he did. Cleveland was roughly twenty to thirty yards from the vehicle when he was ordered to stop. Officer Smith handcuffed Cleveland and returned him to the vehicle. He also conducted a pat-down search of Cleveland, during which he did not smell marijuana on Cleveland's person nor did he find a gun.

[5]     Sometime later, Officer Smith went to retrieve Cleveland's gold bag from the Walgreens parking lot. At some point, Officer Smith detected the smell of

marijuana coming from the bag.[4] Officer Smith opened the bag and found a handgun and two individual baggies containing marijuana. Officer Nathan Shell was dispatched to the scene to retrieve the gun, and he noticed that the handgun had seventeen rounds of ammunition inside the magazine and one round loaded inside the chamber. Officer Shell placed Cleveland in the back of the vehicle and read him his *Miranda*[5] rights. Cleveland admitted that the handgun found inside the bag was his and that he used it for protection. He also testified that he knew about the marijuana but that he had "nothing to do with [it][.]" Tr. Vol. II p. 31.

[6] On November 27, 2017, the State charged Cleveland with one count of Class A misdemeanor carrying a handgun without a license and one count of Class A misdemeanor possession of marijuana. At Cleveland's August 27, 2018, bench trial, Cleveland objected to the State's introduction of the handgun and the marijuana found inside the gold bag, arguing that the evidence was obtained from a search that was unlawful under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court overruled his objection. Later, at the conclusion of trial, Cleveland renewed his objection, arguing that the State lacked probable

---

[4] On direct examination, Officer Smith testified that he smelled the marijuana after opening the bag, but on cross-examination, Officer Smith testified that he smelled the marijuana as he "got actually close to the bag and picked it up." Tr. Vol. II p. 17, 24.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

cause to arrest him in the first place. Once again, the trial court overruled his objection.

[7] The trial court found Cleveland guilty as charged. After a sentencing hearing, the trial court imposed a 365-day aggregate sentence, with 263 days suspended to probation and 90 days suspended to home detention. Additionally, without conducting an indigency hearing, the trial court ordered Cleveland to pay a $50 public defender fee; the trial court also ordered that Cleveland's handgun be destroyed. Cleveland now appeals.

# Discussion and Decision

# I. Search

[8] First, Cleveland argues that the trial court erroneously admitted evidence in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[6] Specifically, Cleveland contends that certain evidence—the handgun and the marijuana—should have

---

[6] There is some confusion over whether Cleveland properly preserved one issue for appeal. Cleveland did, in fact, object to the introduction of the evidence obtained from the search of his gold bag and the arrest, but the State argues that this was not a continuing objection that covered his lone statement to Officer Shell. *See* Ind. Evidence Rule 103(b). The record shows that Cleveland did not object to preserve this issue for appeal, so we can only review it for fundamental error. *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). There is fundamental error only when the resulting error denies the defendant fundamental due process. *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). And because this was one brief statement—made in isolation by Cleveland, who had been properly *Mirandized*—we find that the trial court did not commit fundamental error by admitting it. *See Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind. 1995) (holding that the trial court's admission of a negative statement is not fundamental error when there is sufficient independent evidence of guilt).

been excluded because the officers' search of his gold bag was unlawful under the federal and state constitutions.

[9] As a general matter, the Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Article 1, Section 11 of the Indiana Constitution contains nearly identical language and says that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated[.]" Evidence that is the product of an unlawful search is inadmissible under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. *Hill v. State*, 956 N.E.2d 174, 177 (Ind. Ct. App. 2011) (holding that evidence that is obtained from an illegal search is "fruit of the poisonous tree," and therefore, inadmissible in a court of law).

[10] We will not reverse the trial court's decision to admit evidence unless it is clearly against the logic and effect of the facts and circumstances before it. *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). We will review a trial court's conclusions of law de novo, giving no weight to the legal analysis below. *Sanders v. State*, 989 N.E.2d 332, 334 (Ind. 2013).

*The Fourth Amendment to the United States Constitution*

[11] The Fourth Amendment prohibits warrantless searches unless an exception applies. *Black v. State*, 810 N.E.2d 713, 715 (Ind. 2004). The automobile exception is well established, allowing officers to conduct a warrantless search of a vehicle where (1) the vehicle was readily mobile or capable of being driven

when the police first seized it; and (2) probable cause existed that the vehicle contained contraband or evidence of a crime. *Cheatham v. State*, 819 N.E.2d 71, 75-76 (Ind. Ct. App. 2004). Probable cause exists "where facts found on a reasonable inquiry would induce a reasonably intelligent and prudent person to believe the accused has committed [a] crime." *Street v. Shoe Carnival, Inc.*, 660 N.E.2d 1054, 1056 (Ind. Ct. App. 1996). "The determination of probable cause is a mixed question of law and fact." *Earles v. Perkins*, 788 N.E.2d 1260, 1264 (Ind. Ct. App. 2003). Furthermore, the standard for attaining probable cause is the same under both the federal and state constitutions. *See, e.g., State v. Gilbert*, 997 N.E.2d 414, 417 (Ind. Ct. App. 2013).

[12]   Here, it is undisputed that the officers had the authority to invoke the automobile exception to search the Ford Explorer and its contents therein.[7] However, Cleveland contends that the automobile exception did not extend to his person or his gold bag because he had left the vehicle. What is most pertinent to our analysis is the fact that Cleveland and his gold bag were inside the vehicle at the time that the officers suspected the vehicle of containing contraband. By virtue of the bag's presence inside the vehicle, the officers had the constitutional authority to search it from the outset. *See Wilkinson v. State*, 70 N.E.3d 392, 404 (Ind. Ct. App. 2017) (holding that under the automobile

---

[7] During oral argument, Cleveland argued that the officers could not have had probable cause to believe that a crime had occurred inside the vehicle because they only smelled raw as opposed to burnt marijuana. Despite Cleveland's insistence, there is no difference between raw marijuana or burnt marijuana for purposes of establishing probable cause. Possession of either is illegal under state law, and the smell of either would lead a reasonably intelligent and prudent officer to conclude that there is potential criminal activity afoot.

exception, once probable cause is established, officers are permitted to search any items in the vehicle that might conceal controlled substances); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) (establishing that "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search[]").

[13]    Here, it does not matter that Cleveland left the vehicle with the bag and walked away. The gold bag was inside the vehicle at the time of the initial seizure, and during that time, the officers could have invoked the automobile exception to search it. The probable cause to stop and search the vehicle and its contents was established from the beginning, and said probable cause did not cease the moment Cleveland exited the vehicle and walked away. If this were the case, passengers—even those as compliant, respectful, and non-violent as Cleveland—would have license to abscond with contraband from police presence to avoid any possibility of arrest for themselves or for those still inside the vehicle. Therefore, the search of Cleveland's gold bag did not violate the Fourth Amendment to the United States Constitution. [8]

---

[8] Because we find that the officers had the probable cause necessary to search the gold bag, there is no need to address whether the officers had probable cause to arrest Cleveland under the belief that he was fleeing the scene of a crime or that his gold bag smelled of marijuana while outside the vehicle. Having already concluded that the officers could search the gold bag pursuant to the automobile exception to the warrant requirement, such an analysis is unnecessary.

[14]    Searches by law enforcement require a different review under Article 1, Section

11 of the Indiana Constitution:

> Conformity of a search to the Indiana Constitution turns on an
> evaluation of the "reasonableness" of the conduit of the law
> enforcement officers, not on the expectation of privacy commonly
> associated with Fourth Amendment analysis. Relevant
> considerations in evaluating reasonableness of a search under all
> the circumstances include the degree to which the search or
> seizure disrupts the suspect's normal activities, and those facts and
> observations that support the officer's decision to initiate the
> search or seizure. . . . [T]he reasonableness of a search or seizure
> generally turns on a balance of: 1) the degree of concern,
> suspicion, or knowledge that a violation has occurred, 2) the
> degree of intrusion the method of the search or seizure imposes on
> the citizen's ordinary activities, and 3) the extent of law
> enforcement needs.

*Stark v. State*, 960 N.E.2d 887, 892 (Ind. Ct. App. 2012) (internal citations

omitted). With this analysis in mind, we find that the search of Cleveland's gold

bag did not violate Article 1, Section 11 of the Indiana Constitution, and

therefore, any evidence obtained as a result of the lawful search is admissible.

[15]    First, regarding knowledge of a violation, there was the initial suspicion that a

traffic violation had occurred. Then, as the officers approached either side of the

stopped vehicle, they smelled raw marijuana. This created a strong suspicion

that there was illegal activity happening inside the vehicle, regardless of

whether the driver, passenger, or backseat passenger was committing it. Also,

Officer Parrish ran a license plate check of the vehicle and discovered that the

plates were registered to another vehicle. This discrepancy created a strong suspicion in the minds of the officers that the vehicle was stolen and that the occupants had committed a theft. Furthermore, the driver had an outstanding warrant for his arrest, and when the officers attempted to pat down the driver, he began resisting until the point of his detention and arrest. All of this evidence in the aggregate created a strong suspicion that the law had been violated.

[16] Second, regarding the intrusion into Cleveland's ordinary activities, Cleveland had already been detained along with the vehicle's other occupants in the initial stop. While he may not have been arrested at this point, Cleveland was asked for his identification as part of the traffic stop. Therefore, there was little further intrusion into Cleveland's normal activities since he had already been restricted in action. Cleveland had already walked some twenty to thirty yards away from the vehicle before he was officially stopped, handcuffed, and searched. Just "because the driver may have been independently culpable for the traffic offenses, [it] does not entitle the passenger to simply exit the vehicle and walk away." *Tawdul v. State*, 720 N.E.2d 1211, 1217 (Ind. Ct. App. 1999). Yes, Cleveland's normal activities were interrupted by the stop and search, but there was no indication that Cleveland had permission to leave the vehicle, especially since the officers were attempting to detain and arrest the driver. Moreover, even though we are evaluating this intrusion under a reasonableness standard and not under an expectation of privacy standard, our Supreme Court has held that "individuals have a 'reduced expectation of privacy with regard to the property they transport in cars' traveling on public highways where the property

is subject to police examination and is 'exposed to traffic accidents that may render all their contents open to public scrutiny.'" *Krise v. State*, 746 N.E.2d 957, 971 (Ind. 2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999)). As such, this search did not unreasonably intrude into Cleveland's normal activities.

[17] Third, regarding the extent of law enforcement needs, even though there was no indication that Cleveland was armed, the officers were dealing with a precarious situation. Not only did the driver of the vehicle resist arrest, leading both officers to be solely focused on him, but Cleveland also amplified the situation by exiting the vehicle with the gold bag in tow. The officers had the authority to defuse the situation and confirm that Cleveland did not have any contraband on his person. Furthermore, as mentioned above, the officers had the probable cause necessary to search the gold bag pursuant to the automobile exception, and that authority to search did not diminish once Cleveland walked away. Consequently, a search of the bag was necessary for law enforcement to ensure that potential evidence would not be removed or destroyed, especially considering that the officers suspected the vehicle of containing contraband.

[18] Therefore, in looking at the totality of the circumstances, this search of Cleveland's gold bag was lawful pursuant to Article 1, Section 11 of the Indiana Constitution, and all evidence obtained from that search was admissible.

# II. Handgun Destruction

[19] Next, Cleveland argues that the trial court erred when it ordered the destruction of his handgun post-conviction because the trial court lacked statutory authority to do so.

[20] Statutory interpretation is a question of law reserved for the court and is reviewed de novo. *Montgomery v. State*, 878 N.E.2d 262, 266 (Ind. Ct. App. 2007). We assign words their plain and ordinary meaning unless the statute provides other definitions. *Id.* Our primary rule for statutory construction is to ascertain and give effect to the intent of the legislature. *Chambliss v. State*, 746 N.E.2d 73, 77 (Ind. 2001).

[21] Indiana Code section 35-47-3-2(b) authorizes trial courts to order return or disposal of a firearm post-conviction, and it says the following:

> (b) Firearms shall be returned to the rightful owner at once following final disposition of the cause . . . . If the rightful ownership is not known the law enforcement agency holding the firearm shall make a reasonable attempt to ascertain the rightful ownership and cause the return of the firearm. However, nothing in this chapter shall be construed as requiring the return of firearms to rightful owners *who have been convicted for the misuse of firearms*. . . .

(Emphasis added). This Court has affirmed a trial court's authority to order destruction of a firearm for those convicted of misuse of a firearm. *See Barany v. State*, 54 N.E.3d 386, 387-88 (Ind. Ct. App. 2016) (holding that the trial court's

order to destroy a firearm used by defendant for murder was an appropriate option because defendant had misused the weapon).

[22] In *Trice v. State*, this Court directly answered the question of whether use of a firearm included mere possession of a firearm, holding as follows:

> [T]he definitions of the term "misuse" can best be applied here to mean that a conviction for the *misuse* of a firearm must involve some *use* of the firearm that is incorrect, improper, or unsuitable. Trice did not use the handgun; rather, he was merely in possession of it. Thus, it defies logic and relevant precedent to say that he misused the handgun.

114 N.E.3d 496, 501 (Ind. Ct. App. 2018) (emphases in original), *trans. denied*. Stated another way, *Trice* held that the definition of use does not encompass mere possession.

[23] In reaching its holding, the *Trice* Court cited precedent from our Supreme Court that reached similar conclusions, albeit in other legal contexts. In *Nicoson v. State*, 938 N.E.2d 660 (Ind. 2010), our Supreme Court analyzed Indiana Code section 35-50-2-11, which defines when a firearm is "used" in the commission of an offense, as a separate charge, or for purposes of an enhanced sentence. In deferring to our General Assembly, the Supreme Court held as follows:

> Mere possession of a firearm or being "armed" with a deadly weapon is not enough. As the Court of Appeals pointed out, it is reasonable to infer that the General Assembly was recognizing the additional escalation of danger associated with the actual use of a firearm versus the mere possession of one during the commission of an offense.

*Id.* at 665. Thus, our Supreme Court in *Nicoson* found that the trial court had the authority to add a five-year enhancement to the defendant's sentence because of the defendant's actual use of the weapon—namely, holding a "9 millimeter weapon to somebody's head as they were lying in a prone position." *Id.*

[24] The *Trice* Court also cited *Mickens v. State*, 742 N.E.2d 927 (Ind. 2001), in which our Supreme Court held that there was a difference between use of a firearm and possession of a firearm for purposes of double jeopardy. More specifically, our Supreme Court stated that "[c]arrying the gun along the street was one crime and using it was another." *Id.* at 931. The *Mickens* Court held that the defendant's convictions for murder and carrying a handgun without a license did not violate the prohibition against double jeopardy because these crimes required the State to proffer evidence of different criminal acts committed by the defendant. Once again, our Supreme Court deferred heavily to the General Assembly in determining that there were several instances where the legislature required proof of action in statutes containing "use" of a firearm and that the legislature had amended these statutes without including possession in its definition. Therefore, to possess is not to use.

[25] Also, the *Trice* Court cited *Daniels v. State*, 957 N.E.2d 1025, 1030 (Ind. Ct. App. 2011), in which this Court held that "[t]he word 'use,' in statutes prohibiting the use of a firearm in the commission of an offense, includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Consequently, the *Trice* Court reversed the trial court's order to destroy the firearm post-conviction.

[26] Given this legal backdrop, we find Cleveland's argument compelling. This Court, along with our Supreme Court, has reasonably concluded that the General Assembly did not define "use" to include an action like "possession." In evaluating precedent, deference to the legislature, and a strict construction of criminal statutes against the State with ambiguities resolved in favor of the defendant, *see Chastain v. State*, 58 N.E.3d 235, 238 (Ind. Ct. App. 2016), *trans. denied*, we conclude that a conviction involving unlawful possession of a firearm alone does not give a trial court statutory authority to order destruction of a firearm post-conviction.

[27] Moreover, like the defendant in *Trice*, Cleveland was found with a gun, was compliant with law enforcement throughout the entire process, and was tried and convicted under the same criminal statute.[9] There is no evidence to support the contention that Cleveland was using the firearm in an incorrect, improper, or unsuitable way. Accordingly, the trial court erred when it ordered destruction of Cleveland's firearm post-conviction.

[28] However, in terms of relief, the immediate return of Cleveland's firearm is not permissible under current law. Cleveland is still not licensed to carry a firearm, and the trial court does not have the authority to return the firearm directly to Cleveland. As of now, given our lack of statutory guidance, we order that the

---

[9] *See* I.C. § 35-47-2-1.

IMPD must withhold Cleveland's firearm until a proper solution becomes available. This is a conundrum that only our General Assembly can resolve.

# III. Indigency Hearing

[29] Third, Cleveland argues that the trial court erred when it ordered him to pay a public defender fee without first conducting an indigency hearing and without making a finding on whether Cleveland was indigent. Sentencing decisions, including those where a trial court imposes fees and costs, are generally left to the trial court's discretion. *Kimbrough v. State*, 911 N.E.2d 621, 636 (Ind. Ct. App. 2009). We will reverse a trial court's sentencing decision only if it is clearly against the logic and effect of the facts and circumstances before it. *McElroy v. State*, 865 N.E.2d 584, 588 (Ind. 2007). "A defendant's indigency does not shield him from all costs or fees related to his conviction." *Banks v. State*, 847 N.E.2d 1050, 1051 (Ind. Ct. App. 2006).

[30] Three statutory provisions allow a trial court to impose fees on a defendant to offset public defender costs. The first is found in Indiana Code section 35-33-7-6(c)(2), which reads as follows:

> (c) If the court finds that the person is able to pay part of the cost of representation by the assigned counsel, the court shall order the person to pay the following:
>
> > (1) For a felony action, a fee of one hundred dollars ($100).
> >
> > *(2) For a misdemeanor action, a fee of fifty dollars ($50).*

(Emphasis added).

[31] The second is found in Indiana Code section 33-40-3-6(a)(1), and it reads as follows:

> (a) If at any stage of a prosecution for a felony or a misdemeanor the court makes a finding of ability to pay the costs of representation under section 7 of this chapter, the court shall require payment . . . of the following costs in addition to other costs assessed against the person:
>
>> (1) Reasonable attorney's fees if an attorney has been appointed for the person by the court.

The language of this statutory provision is similar to the language in section 35-33-7-6(c)(2). In both provisions, the trial court must find that the defendant is indigent before it can impose a public defender fee.

[32] The third is found in Indiana Code section 33-37-2-3(e), and it reads as follows:

> (e) If, after a hearing under subsection (a) or (b), the court determines that a convicted person is able to pay part of the costs of representation, the court shall order the person to pay an amount of not more than the cost of the defense services rendered on behalf of the person. . . .

This is the only statutory provision requiring the trial court to conduct a hearing to determine if the defendant is indigent, which is what Cleveland is requesting. In the previous two sections, the trial court simply has to make a finding on whether the defendant can pay for part or all of his representation from a public defender.

[33] Even though the trial court did not specify under which statute it ordered Cleveland to pay a public defender fee, certain language in the record provides

us with clarity. The trial court referred to the fees imposed as "recoupment fees[,]" tr. vol. II p. 56, and later as "Supplemental Public Defender Fee[s][.]" Appellant's App. Vol. II p. 11. This is the very language used by our Court to describe fees ordinarily imposed under section 35-33-7-6(c). *See Langdon v. State*, 71 N.E.3d 1162, 1164 (Ind. Ct. App. 2017). Furthermore, the trial court imposed a $50 fee, the same amount specified for misdemeanor convictions in section 35-33-7-6(c)(2). Accordingly, it is more than likely the trial court imposed the $50 public defender fee pursuant to section 35-33-7-6(c). We find no reason to remand for clarification when the dollar amount and language from the trial court's order matches this specific statutory provision. Therefore, because this statutory provision does not require the trial court to conduct an indigency hearing, the trial court in Cleveland's case did not err by not conducting one.

[34] Cleveland also argues that the trial court failed to make a finding on whether he was indigent, which all three statutes require. Cleveland's argument is unavailing. While the trial court did not set aside time during sentencing solely to evaluate and rule on Cleveland's indigency status, it still took the necessary steps that would ordinarily aid a trial court in making such a finding. The trial court asked Cleveland numerous questions about his employment, working hours, financial status, and custody arrangements. *See* Tr. Vol. II p. 54-55. Implicit in the response to Cleveland's answers is the trial court's finding that Cleveland could offset part of the cost of his public defender's representation. The trial court did its due diligence by inquiring into Cleveland's financial

abilities and making an implicit finding about Cleveland's indigency status. Therefore, it did not err.[10]

[35]     The judgment of the trial court is affirmed in part and reversed and remanded in part with instructions.

Robb, J., concurs.
Bradford, J., concurs in part and dissents in part with a separate opinion.

---

[10] Despite this outcome, we note that it is still the better practice for trial courts to include an explicit indigency finding in their record along with reference to the proper statutory provision.

Darnell Cleveland,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
18A-CR-2298

**Bradford, Judge, concurs in part and dissents in part with opinion.**

[36]     While I concur with the majority's disposition in most respects, I must disagree with its conclusion that a conviction for carrying a handgun without a license does not entitle a law enforcement agency to seize and destroy the handgun in question. I find the reasoning of *Trice v. State*, 114 N.E.3d 496 (Ind. Ct. App. 2018), *trans. denied*, on which Cleveland relies, to be unpersuasive and so would affirm the judgment of the trial court in full. Consequently, I respectfully dissent in part.

[37] Indiana Code section 35-47-3-2(c) authorizes the seizure and disposal of firearms by the authorities "when the rightful owner has been convicted of an offense related to the misuse of a firearm[,]" and I conclude that carrying a handgun without a license easily qualifies as "misuse." The verb "to use" may be defined as "to put into action or service [or] *have recourse to or enjoyment of*[,]" while the noun "misuse" may be defined as "wrong or improper use[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1447, 2523 (Phillip Babcock Gove et al. eds., G.&C. Merriam Company 1964) (emphasis added). A person carrying a handgun for protection (as was Cleveland) is ensuring that he will have recourse to it should the need arise and may enjoy the sense of security its possession provides, even if it is not further employed. In other words, he is "using" the handgun for self-defense by carrying it with him. This use becomes misuse, however, when the person is not legally entitled to carry that handgun. I conclude that the authorities were well within their rights to seize and destroy Cleveland's handgun.

[38] In reaching the opposite conclusion on indistinguishable facts, the *Trice* court relied on the Indiana Supreme Court's opinions in *Nicoson v. State*, 938 N.E.2d 660 (Ind. 2010), and *Mickens v. State*, 742 N.E.2d 927 (Ind. 2001). In my view, neither of those cases has any applicability here. In *Nicoson*, the Indiana Supreme Court addressed the scope of Indiana Code section 35-50-2-11, which provides, in part, that sentences for certain convictions can be enhanced upon a showing that "the person knowingly or intentionally used a firearm *in the commission of the offense*." (Emphasis added). Section 32-50-2-11 seems to

clearly require some active employment of the firearm beyond mere possession, such as firing, pointing, brandishing, etc., to commit the underlying offense. In contrast, no such active use is required by section 35-47-3-2. So, while I have no quarrel with the *Nicoson* Court's conclusion that "[m]ere possession of a firearm or being 'armed' with a deadly weapon is not enough" in the context of section 35-50-2-11, *Nicoson*, 938 N.E.2d at 665, the case simply does not stand for the proposition that mere possession does not qualify as misuse pursuant to Indiana Code section 35-47-3-2. In my view, *Nicoson*'s interpretation of an entirely different statute has no bearing on this case.

[39] The holding of *Mickens* is similarly inapplicable to Indiana Code section 35-47-3-2. Mickens was convicted of murder (for shooting his victim twice) and carrying a handgun without a license, and one of his claims on appeal was that the two convictions violated the same-actual-evidence test.[11] The *Mickens* court rejected the claim, stating that "[c]arrying the gun along the street was one crime and using it was another." *Mickens*, 742 N.E.2d 931. While the *Trice* court concluded that this passage serves to draw a hard-and-fast distinction between possession and use, I would attach no such significance to it. The question of whether carrying a handgun constitutes "use" was not at issue in *Mickens*. Moreover, literal application of the above passage would restrict "use"

---

[11] "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

of a firearm to actually firing it, an interpretation that would exclude such obvious uses as pistol-whipping or pointing. *Mickens* was never meant as a statement on the question of what does—or does not—constitute "use" of a firearm. I would not apply it here.

[40] In summary, I have little trouble concluding that possession of a handgun without a license qualifies as misuse pursuant to Indiana Code section 35-47-3-2. Consequently, I would affirm the judgement of the trial court in all respects.