## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 25 2020, 9:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Deputy Public Defender
Anthony S. Churchward, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua R. Mackin, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 25, 2020 <br><br> Court of Appeals Case No. 19A-CR-1651 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable David M. Zent, Judge <br><br> Trial Court Cause No. 02D06-1803-MR-4 |

**Baker, Judge.**

[1] Joshua Mackin appeals his convictions and the sentence imposed by the trial court for Murder[1] and Level 4 Felony Unlawful Possession of a Firearm by a Serious Violent Felon,[2] arguing that (1) his firearm conviction and the firearm enhancement attached to his murder conviction violate Indiana's prohibition against double jeopardy; and (2) the sentence is inappropriate in light of the nature of the offenses and his character. Finding no double jeopardy violation and the sentence not inappropriate, we affirm.

## Facts

[2] Throughout the early part of 2018, Mackin and his stepbrother, Sam Westlake, had both been romantically involved with the same woman, Kerri Pendergrass. Mackin became infuriated with Westlake over this, repeatedly getting into verbal altercations with him and even threatening in the comments section on Mackin's Facebook page to kill Westlake. Westlake became worried that Mackin might actually harm him.

[3] On February 19, 2018, Westlake, along with his friend Ryan Masoner, drove in Westlake's Jeep to Mackin's home to pick up a white truck. Once there, Mackin, Masoner, and Westlake all worked on the truck until it was up and running. The three planned to drive that truck, along with Westlake's Jeep, to a local motel. Before leaving, Mackin shot Westlake in the Jeep five times before

---

[1] Ind. Code § 35-42-1-1.

[2] Ind. Code § 35-47-4-5(c).

Mackin and Masoner took off with the truck. Westlake died as a result of the shooting. Eventually, Mackin dropped off the truck and Masoner disposed of the firearm in a nearby river. According to Masoner, Mackin had told him that "if you talk to any of the police or anything you need to tell them that when we left [Westlake] . . . he was alive." Tr. Vol. I p. 107-08. Masoner also testified that "[Mackin] threatened myself and my family if I would say anything." *Id.* at 108. Soon thereafter, Mackin drove to the Allen County Community Corrections office to meet up with Pendergrass. On Mackin's person was a separate firearm that was not used in Westlake's murder. Mackin and Pendergrass then drove to Pendergrass's house, and once there, Mackin shaved and bleached his head and stored the second firearm in the ceiling. Eventually, Mackin was arrested for Westlake's murder.

[4] On March 8, 2018, the State charged Mackin with murder, Level 4 felony unlawful possession of a firearm by a serious violent felon, and a use of a firearm enhancement in connection with the murder charge. The State also alleged that Mackin was an habitual offender. At the conclusion of Mackin's April 29, 2019, trial, the jury found Mackin guilty as charged. In a later proceeding, the jury also found that Mackin was an habitual offender.

[5] At Mackin's May 20, 2019, sentencing hearing, the trial court found the circumstances of Mackin's offenses, his substantial criminal history, and his multiple revocations of parole and violations of probation to be aggravators. The trial court found no mitigators. In sum, the trial court sentenced Mackin to consecutive sentences of 65 years executed for the murder conviction, 12 years

executed for the Level 4 felony unlawful possession conviction, 20 years executed for the firearm enhancement, and an additional 20 years executed for the habitual offender finding, for an aggregate term of 117 years. Mackin now appeals.

# Discussion and Decision

## I. Double Jeopardy

First, Mackin argues that his conviction for unlawful possession of a firearm by a serious violent felon and the firearm enhancement attached to his murder conviction violate Indiana's prohibition against double jeopardy. The principle of double jeopardy prohibits the State from punishing a defendant twice for the same offense. *Mehidal v. State*, 623 N.E.2d 428, 434 (Ind. Ct. App. 1993); *see generally* Ind. Const. art. 1, § 14. We review questions of double jeopardy de novo, giving no consideration to the trial court's decision below. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

More specifically, Mackin argues that there is a reasonable possibility that the jury relied on the same facts to convict him of both unlawful possession of a firearm by a serious violent felon and the firearm enhancement attached to his murder conviction. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). Under this "actual evidence" test, Mackin must show that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State*, 717 N.E.2d 32, 53

(Ind. 1999). There is no double jeopardy violation when the evidentiary facts establishing the essential elements of one offense satisfy many, but not all, of the essential elements of the second offense. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013).

[8] To add a firearm enhancement in connection with Mackin's murder conviction, the State had to prove beyond a reasonable doubt that Mackin knowingly or intentionally used a firearm in the commission of the murder. Ind. Code § 35-50-2-11(d). To convict Mackin of Level 4 felony unlawful possession of a firearm by a serious violent felon, the State was required to prove beyond a reasonable doubt that Mackin, a serious violent felon, knowingly or intentionally possessed a firearm. I.C. § 35-47-4-5(c).

[9] First, with regards to the firearm enhancement, the State proffered evidence that Mackin, with clear intent, used a firearm to shoot Westlake five times in succession, thereby killing him. The State also showed that Masoner later disposed of that firearm in a nearby river. Next, with regards to the unlawful possession of a firearm by a serious violent felon conviction, the State proffered evidence that Mackin has a substantial criminal history classifying him as a serious violent felon and that at some point, Mackin possessed a firearm that he used to kill Westlake. Additionally, the State demonstrated that Macklin possessed *another* firearm that he had on his person when he went to visit Pendergrass. The record shows that Mackin eventually hid that firearm in the ceiling once he arrived at Pendergrass's house.

[10]     In looking at this evidence, there is not a reasonable possibility that the jury relied on the same evidence to establish the essential elements of both the unlawful possession conviction and the firearm enhancement. The presence of an entirely separate firearm demonstrates that the jury likely relied on different evidence from different points of the evening in question in order to arrive at its judgment.

[11]     Most importantly, the actions of "use" and "possess" are separate and distinct. For the unlawful possession count, the jury had to find beyond a reasonable doubt that Mackin simply possessed a firearm, which he did at multiple times throughout the course of the evening leading up to and following the murder. Further, there were two different firearms that Mackin definitely possessed. For the firearm enhancement count, on the other hand, the jury had to find beyond a reasonable doubt that Mackin actually used, operated, "fire[d]," or "brandish[ed]," *Daniels v. State*, 957 N.E.2d 1025, 1030 (Ind. Ct. App. 2011), a firearm in furtherance of the crime of murder, which happened when he shot Westlake five times. *See, e.g.*, *Cleveland v. State*, 129 N.E.3d 227, 236 (Ind. Ct. App. 2019) (holding that, in evaluating a defendant's claim about whether destruction of his firearm is inappropriate, "[t]his Court, along with our Supreme Court, has reasonably concluded that the General Assembly did not define 'use' to include an action like 'possession'"); *see also Trice v. State*, 114 N.E.3d 496, 500-01 (Ind. Ct. App. 2018). As such, the jury had to rely on different evidence and criminal actions in order to convict Mackin of both counts.

Stated another way, there is not a reasonable possibility that the jury here relied on the same evidentiary facts to establish the essential elements of both of these crimes. Accordingly, we find that there was no double jeopardy violation.

# II. Appropriateness

Next, Mackin argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character.

Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The question is not whether another sentence is more appropriate, but whether the defendant's specific sentence is inappropriate. *Steinberg v. State*, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011). In determining whether the sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime, the damage done to others, and a "myriad [of] other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

For a murder conviction, the maximum sentence is sixty-five years, and the minimum sentence is forty-five years. I.C. § 35-50-2-3(a). The advisory sentence is fifty-five years. *Id.* For a Level 4 felony conviction, the maximum sentence is twelve years, and the minimum sentence is two years. I.C. § 35-50-2-5.5. The

advisory sentence is six years. *Id.* For an enhancement for a firearm used in the commission of murder, the trial court may impose an additional term of between five and twenty years. I.C. § 35-50-2-11(g). For an habitual offender adjudication for someone convicted of murder or a Level 1 through Level 4 felony, the trial court may impose an additional term of between six and twenty years. I.C. § 35-50-2-8(i)(1). Here, the trial court imposed consecutive, maximum terms for each conviction, enhancement, and/or adjudication, resulting in an aggregate term of 117 years.

[16] First, as to the nature of the offenses, Mackin has committed truly heinous actions. In cold blood, Mackin shot and killed Westlake for no apparent reason, other than a conflict over a romantic relationship. On the night in question, Masoner drove with Westlake to Mackin's house to repair a truck. But, upon further evaluation, it seems that it was all a ruse by Mackin and Masoner to get close to Westlake so they could kill him. Then, after the deed was committed, Masoner disposed of the murder weapon, and Mackin drove off in the truck. Mackin even shaved his head, changed his physical appearance, and hid a second firearm so as to avoid detection. All the while, Mackin possessed not one, but two different firearms—weapons which he was legally proscribed from keeping on his person. Therefore, we find that the nature of the offenses does not render Mackin's sentence inappropriate.

[17] Next, as to Mackin's character, Mackin has a criminal record that includes adjudications and convictions for attempted auto theft, theft, resisting law enforcement, robbery, burglary, and unauthorized absence from home

detention. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (holding that "it is appropriate to consider such a [criminal] record as a poor reflection on the defendant's character"). He has also violated probation and parole multiple times. His criminal record is severe enough that the jury adjudicated him to be both a serious violent felon and an habitual offender. And overall, the large number of offenses shows a clear disregard for the rule of law.

[18] To make matters worse, Masoner testified that Mackin threatened him to keep quiet and lie or else Mackin would harm Masoner and his family. It is apparent to us that Mackin knew precisely what he was doing at every step of the way, and he went to great lengths to ensure that no one would find out about his criminal deeds. Mackin's sheer disregard for Westlake's life, the threatening Facebook posts, his lengthy criminal record, his multiple violations and revocations of parole and probation, and his behavior following the murder demonstrate that Mackin has no remorse for what he has done and has not learned the error of his ways. Thus, we find that Mackin's character does not render his sentence inappropriate.

[19] In sum, we will not revise Mackin's sentence pursuant to Indiana Appellate Rule 7(B).

[20] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.